2000 OK CIV APP 59

**WESTERN STAR FINANCE, INC., Plaintiff/Appellant**

**v.**

**Daniel WHITE and Suzan White, Defendant/Appellees,**

and

**Chaser Truck & Diesel, Inc., Stillwater National Bank & Trust Co., and Triad Bank, N.A., Defendants**

No. 93709.

Court of Civil Appeals of Oklahoma, Division No. 3.

March 31, 2000

*OPINION*

CAROL M. HANSEN, Vice–Chief Judge:

¶1 Plaintiff/Appellant, Western Star Finance, Inc. (Lender), seeks review of the trial court's order granting rehearing and new trial to Defendant/Appellees, Daniel White and Suzan White, and vacating Lender's summary judgment. We affirm because the record before the trial court established the existence of issues of material fact.

¶2 Lender sued Chaser Truck & Diesel, Inc. (Chaser), on a note and joined the Whites as guarantors. It named other entities as having interests in the collateral, but later dismissed those entities without prejudice. After Lender obtained summary judgment against Chaser, it moved for summary judgment against the Whites. The Whites objected and filed their own motions for summary judgment against Lender, asserting Daniel White did not sign the guaranty in connection with the defaulted loan, there was no consideration for his guaranty, and Suzan White's guaranty was obtained in violation of the Equal Credit Opportunity Act. The trial court denied the Whites' motions on May 17, 1999. It granted Lender's motion on June 18, 1999. The Whites moved for new trial and reconsideration and requested a hearing. Lender objected. After a hearing, the trial court granted the Whites' motion and vacated the summary judgment.

¶3 Lender appeals, contending the trial court erred in granting new trial and vacating Lender's summary judgment by (1) considering late-raised, purported factual issues despite the existence of sufficient evidence to support the summary judgment, (2) considering parol evidence, and (3) misconstruing the Equal Credit Opportunity Act. We will review the trial court's denial of summary judgment *de novo* to determine whether there is substantial controversy as to any material fact and whether one party is entitled to judgment as a matter of law.[1]  All

Andrew R. Turner, David H. Herrold, Tulsa, Oklahoma, For Plaintiff/Appellant.

Patrick O'Conner, Tulsa, Oklahoma, For Defendant/Appellees.

---

1. Lender argues this matter should be reviewed under the standard in *Fletcher v. Meadow Gold Co.,* 1970 OK 135, 472 P.2d 885, 888, where the Court stated, "If reasonable support by competent evidence appears then the trial court's action in granting a new trial constituted an abuse of discretion, since a trial court cannot exercise the prerogative to substitute its opinion for that of the jury when considering a motion for new trial." This matter does not involve a jury ver-

conclusions and inferences drawn from the evidence must be viewed in the light most favorable to the party opposing the motion. Even if the basic facts are undisputed, summary judgment should be denied if reasonable persons might reach different inferences or conclusions from the undisputed facts. *Bird v. Coleman*, 1997 OK 44, 939 P.2d 1123, 1127. The trial court may exercise discretion to change its determination of a summary judgment motion by granting new trial "unless it clearly appears that the court erred in some pure, simple and unmixed question of law, or acted arbitrarily or capriciously." *Steiger v. City Nat. Bank of Tulsa*, 1967 OK 41, 424 P.2d 69, 70.

### I

¶ 4 Lender first contends the trial court erred in granting new trial, thereby improperly allowing the Whites to supplement the record and raise fact issues late. It argues the Whites failed to controvert the facts in Lender's motion for summary judgment but instead sought their own summary judgment relief on their defenses. Lender argues a motion for new trial is not appropriate to fight summary judgment and the trial court should not have considered late-raised issues of fact to grant new trial. The Whites argue the fact issues discussed in their motion for new trial were not raised for the first time in that motion but had been submitted to the trial court in their own motions for summary judgment and incorporated by reference in their response to Lender's motion for summary judgment.

■■ ¶ 5 The trial court may grant a new trial to reexamine its decision on a motion for summary judgment if its decision is contrary to law. 12 O.S.Supp.1999 § 651(6). See, e.g., *Malson v. Palmer Broadcasting Group*, 1997 OK 42, 936 P.2d 940, 942, and *Hunter's Modern Appliance, Inc. v. Bank IV, Oklahoma, N.A.*, 1997 OK CIV APP 79, 949 P.2d 701, 704. The Whites did not supplement the record upon filing their motion for new trial, but relied on the record the parties actually presented on the motions for summary judg-

ment. If Lender's motion for summary judgment should not have been granted in the first instance, the trial court did not abuse its discretion in granting the motion for new trial.

■ ¶ 6 Lender argues the trial court's original decision granting summary judgment was supported by sufficient evidence. This is not our inquiry in reviewing a summary judgment. As the Court stated in *Gray v. Holman*, 1995 OK 118, 909 P.2d 776, 781,

The focus in summary process is not on facts a plaintiff might be able to prove at trial (i.e., the legal sufficiency of evidence that could be adduced) but rather on whether the evidentiary ·materials as a whole (a) show undisputed facts on some or all material issues and (b) will support but a single inference in favor of a successful movant's quest for relief.

■ ¶ 7 Lender submitted evidence (1) it made four loans to Chaser from October through December of 1996, (2) Daniel White signed a security agreement and personal guaranty on September 10, 1996, (3) Suzan White signed a personal guaranty on October 5, 1996, and (4) Chaser defaulted on the loans. Daniel White submitted evidence (1) he signed a guaranty on March 21, 1996 to guarantee a "Floor Plan Loan" from Newcourt Financial to Chaser, (2) Newcourt created Lender as a wholly-owned subsidiary and planned to move its existing floor plan loans to Lender, (3) he signed the guaranty on September 10, 1996 in connection with the proposed transfer of the Floor Plan Loan to Lender and not in connection with the later line of credit loan, (4) the Floor Plan Loan was never transferred to Lender, (5) he sold his interest in Chaser to Chase Bales on September 30, 1996, and (6) on October 3, 1996, he refused to sign a guaranty in connection with the new line of credit loan from Lender to Chaser. Suzan White submitted evidence (1) Lender's line of credit loan proposal letter did not require a personal guaranty from her, (2) she was not an officer,

---

dict; therefore, we will not determine whether there is competent evidence to support the trial court's order.

director, shareholder, or employee of Chaser, (3) she did not fill out a loan form with Lender, (4) Lender did not check her credit record, and (5) she signed the guaranty at Lender's request.

¶ 8 These evidentiary materials taken as a whole do not "support but a single inference in favor" of Lender's request for relief. A trier of fact could find Daniel White did not guarantee the new line of credit loan to Chaser. As discussed in Part III below, a trier of fact could find Suzan White was not an applicant or joint applicant under the Equal Credit Opportunity Act, and Lender did not rely on her property or creditworthiness in making the loan but required her signature solely because she was Daniel White's spouse. Accordingly, the trial court properly granted new trial and vacated the summary judgment in favor of Lender.

## II

■■■ ¶ 9 Lender next argues the trial court erred in considering parol evidence to vary the explicit terms of the written guaranty. The language of a contract governs its interpretation if that language is clear and explicit. 15 O.S.1991 § 154. The execution of a written contract supersedes the oral negotiations preceding or accompanying its execution. 15 O.S.1991 § 137. However, in *Cinco Enterprises, Inc. v. Benso,* 1994 OK 135, 890 P.2d 866, 873, the Oklahoma Supreme Court stated the guaranty statutes contemplate the need for extrinsic evidence where the guaranty agreement does not specify the consideration, at least where 15 O.S.1991 § 323 does not apply.

¶ 10 Section 323 presumes consideration for the guaranty where it is "entered into *at the same time with* the original obligation." (Emphasis added) The evidentiary materials indicate that WSF made no loan to Chaser "at the same time with" the guaranty upon

which this action is based. WSF argues *Cinco* does not apply because the debt involved pre-existed the guaranty and the debt involved here arose after the execution of the guaranty. We are unable to see any significance in this difference. In neither case was the underlying obligation created contemporaneously with the guaranty, and consideration is not presumed.

¶ 11 The guaranty language being construed in *Cinco* was similar to that in the instant case and was general in nature.[2] The creditor must rely on evidence extrinsic to the guaranty document to show consideration; likewise, the purported guarantor may offer extrinsic evidence to controvert that showing. The trial court did not err in considering parol evidence.

## III

■■■ ¶ 12 Lender's last contention is the trial court erred by misconstruing the Equal Credit Opportunity Act (Act), 15 U.S.C. § 1691 et seq. The Act prohibits creditors from discriminating against credit applicants on the basis of sex or marital status. 15 U.S.C. § 1691(a)(1). Regulations promulgated under the Act prohibit a creditor from requiring "the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount." 12 C.F.R. § 202.7(d)(1). If a creditor requires a spouse's signature in violation of the Act, a court may bar the creditor from recovering against the spouse who would have incurred no personal liability but for the violation. *Integra Bank/Pittsburgh v. Freeman,* 839 F.Supp. 326, 329 and 331 (E.D.Pa. 1993).[3]

¶ 13 Suzan White submitted evidence tending to prove she was not a joint applicant and Lender did not rely on her credit standing in

**2.** In *Cinco,* the language provided,

The undersigned Guarantor(s) hereby requests the Lender to give and continue to give the above name Customer(s) credit, and in consideration for any credit given, the undersigned Guarantor hereby absolutely and unconditionally guarantees payment, on demand.... Guarantor agrees to pay ... any

and all existing and future indebtedness and liabilities of every kind....

**3.** See also *Silverman v. Eastrich Multiple Investor Fund, L.P.,* 51 F.3d 28, 33 (3d Cir.1995), *FDIC v. Medmark, Inc.,* 897 F.Supp. 511, 515 (D.Kan. 1995) and *Eure v. Jefferson Nat'l Bank,* 248 Va. 245, 448 S.E.2d 417, 421 (1994).

making the loan. Lender submitted controverting evidence and argues the weight of that evidence. However, we must take Suzan White's evidence as true and view all inferences drawn in the light most favorable to her. Therefore, we hold the trial court properly granted new trial and vacated the summary judgment in favor of Lender.

¶ 14 For the foregoing reasons, the order of the trial court is **AFFIRMED**.

¶ 15 ADAMS, J., and JOPLIN, J., concur.